Robert S. Green (State Bar No. 136183)
Emrah M. Sumer (State Bar No. 329181)
**GREEN & NOBLIN, P.C.**
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

James Robert Noblin (State Bar No. 114442)
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, CA 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

William B. Federman*
*wbf@federmanlaw.com*
Oklahoma Bar No. 2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

**Pro Hac Vice* application to be submitted

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA ROSARIO, individually and on behalf of all others similarly situated and on behalf of the general public, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| PIH HEALTH, INC. | |
| Defendant. | |

Plaintiff Aurora Rosario ("Plaintiff" or "Ms. Rosario"), individually and on behalf of all others similarly situated and on behalf of the general public, for her Class Action Complaint, brings this action against Defendant PIH Health, Inc. ("PIH", "Defendant", or the "Company") based on personal knowledge and the investigation of counsel and alleges as follows:

# I.    INTRODUCTION

1.    With this action, Plaintiff seeks to hold Defendant responsible for the harms they caused her and many other similarly situated persons in the massive and preventable data breach that took place between June 11, 2019 and June 18, 2019 in which cyber criminals, through a phishing event, infiltrated Defendant's inadequately protected email accounts where sensitive personal information was being kept unprotected ("Data Breach" or "Breach").[1]

2.    The cyber criminals gained access to certain of Defendant's employee email accounts with the apparent intention of stealing protected personal information and protected health information of thousands of individuals, whose information was stored on Defendant's computer systems and business email accounts.

3.    PIH touts that it is a nonprofit, regional healthcare network with three hospitals, numerous outpatient medical offices, and a multispecialty medical group, among other healthcare facilities.[2]

4.    Plaintiff and Class members were required, as patients of Defendant, to provide Defendants with their "Personal and Medical Information" (defined below), with the assurance that such information will be kept safe from

---

[1]  The Data Breach appears on the U.S. Department of Health and Human Services' online public breach tool and shows that approximately 199,548 individuals were affected by the Data Breach. *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed September 1, 2021).

[2] *See* https://www.pihhealth.org/about-us/ (last accessed September 1, 2021).

unauthorized access. By taking possession and control of Plaintiff's and Class members' Personal and Medical Information, Defendant assumed a duty to securely store and protect the Personal and Medical Information of Plaintiff and the Class.

5.      Defendant breached this duty and betrayed the trust of Plaintiff and Class members by failing to properly safeguard and protect their Personal and Medical Information, thus enabling cyber criminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

6.      The Personal and Medical Information at issue includes patient names in combination with their treatment/diagnosis, health insurance, claims, and billing information, doctor's name, medical record number, Medicare/Medicaid ID, patient account number, and/or driver's license number. In addition, some individuals' Social Security numbers were accessed.

7.      Defendant's misconduct – failing to timely implement adequate and reasonable measures to protect Plaintiff's Personal and Medical Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that they did not have adequate security practices in place to safeguard the Personal and Medical Information, failing to honor their promises and representations to protect Plaintiff's and Class members' Personal and Medical Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

8.      Due to Defendant's negligence and failures, cyber criminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of nearly two hundred thousand individuals for decades to come.

9.      As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal and Medical Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Personal and Medical Information. Additionally, Plaintiff and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

10.     Plaintiff brings this action individually and on behalf of the Class and seeks actual damages, statutory damages, punitive damages, and restitution, with attorney fees, costs, and expenses, under the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.80, *et seq.*, California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, and further sues Defendant for, among other causes of action, negligence. Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendant's data security systems and protocols, future annual audits, Defendant-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper. incurred in bringing this action, and all other remedies this Court deems proper.

## II.     THE PARTIES

11.     Plaintiff is a citizen and resident of California.

12.     Plaintiff was a patient of, and received medical services from, Defendant.

13.     Plaintiff received a letter from Defendant dated January 7, 2020, informing her that her patient name in combination with her treatment/diagnosis, health insurance, claims, and billing information, doctor's name, medical record

number, Medicare/Medicaid ID, patient account number, and/or driver's license number were compromised in the Data Breach.

14.    As required in order to obtain medical services from Defendant, Plaintiff provided it with highly sensitive personal, health, and insurance information, including her Personal and Medical Information.

15.    Because of Defendant's negligence leading up to and including the period of the Data Breach, Plaintiff's Personal and Medical Information is now in the hands of cyber criminals and Plaintiff is under an imminent and substantially likely risk of identity theft and fraud, including medical identity theft and medical fraud.

16.    The imminent risk of medical identity theft and fraud that Plaintiff and Class members now face is substantial, certainly impending, and continuous and ongoing because of the negligence of Defendant, which negligence led to the Data Breach. Plaintiff has already been forced to spend time and money responding to the Data Breach in an attempt to mitigate the harms of the Breach and determine how best to protect herself from identity theft and medical information fraud. These efforts are continuous and ongoing.

17.    Along with the imminent and risk of medical identity theft and fraud that Plaintiff now faces, she has also experienced monetary fraud as a direct and proximate result of the Data Breach.

18.    Plaintiff's credit card that she used at PIH to make co-pay and deductible payments was hacked. Three fraudulent charges were made in June and July of 2020.

19.    Because Plaintiff's credit card was used at PIH, and the fraudulent charges occurred after the Data Breach, it can be reasonably assumed her Personal and Medical Information were taken in the Data Breach and used to make the fraudulent charges.

20.     Plaintiff had to spend time calling her bank to report the fraudulent charges and had to request a new credit card. She also had to spend time completing paperwork that her bank sent her.

21.     As a direct and proximate result of the Data Breach, Plaintiff and Class members either have purchased or will need to purchase a yearly subscription to identity theft protection and credit monitoring in order to protect themselves from medical identity theft and other types of fraud, of which they are now substantially at risk. This subscription will need to be renewed yearly for the rest of Plaintiff's and Class members' lives.

22.     Plaintiff and Class members have also suffered injury directly and proximately caused by the Data Breach, including damages and diminution in value of their Personal and Medical Information that was entrusted to Defendant for the sole purpose of obtaining medical services necessary for their health and well-being, with the understanding that Defendant would safeguard this information against disclosure. Additionally, Plaintiff's Personal and Medical Information is at continued risk of compromise and unauthorized disclosure as it remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect it.

23.     As part of Defendant's business, Defendant collects substantial amounts of Personal and Medical Information. The information Defendant collects qualifies as "Personal information" under the CCRA and other state data breach and information privacy acts. The medical information that Defendant collects qualifies as "Medical Information" under the federal Health Information Portability and Accountability Act ("HIPAA"), the CMIA, and other state medical record protection acts.

24.     Defendant is headquartered in Whittier, California.

III. **JURISDICTION AND VENUE**

25.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states that differ from Defendant.

26.     This Court has personal jurisdiction over Defendant because Defendant conducts business in and has sufficient minimum contacts with California.

27.     Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Defendant conducts business through this District.

IV. **FACTUAL ALLEGATIONS**

A.     **The California Attorney General Notice**

28.     On or about June 18, 2019, Defendant discovered that unauthorized third-party hackers gained access to certain employee email accounts through a successful phishing event.

29.     Defendant filed with the California Attorney General a sample "Notice of Data Security Incident" letter that mirrored the language of the Notice sent to Plaintiff and Class members.

30.     The sample "Notice of Data Security Incident" letter was filed with the Attorney General of California in accordance with California Civ. Code § 1798.82.

31.     Pursuant to California Civ. Code § 1798.82(f), "[a] person or business that is required to issue a security breach notification pursuant to [§ 1798.82(a)] to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that

security breach notification, excluding any personally identifiable information, to the Attorney General."

32.  Plaintiff's and Class members' Personal and Medical Information is "personal information" as defined by California Civ. Code § 1798.82(h).

33.  Pursuant to California Civ. Code § 1798.82(a)(1), data breach notification letters are sent to residents of California "whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system."

34.  California Civ. Code § 1798.82(g) defines "breach of the security of the system" as the "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business."

35.  The Data Breach was a "breach of the security of the system" as defined by California Civ. Code § 1798.82(g).

36.  Plaintiff's and Class members' unencrypted personal information was acquired by an unauthorized person or persons as a result of the Data Breach.

37.  Defendants reasonably believe Plaintiff's and Class members' unencrypted personal information was acquired by an unauthorized person as a result of the Data Breach.

38.  The security, confidentiality, or integrity of Plaintiff's and Class members' unencrypted personal information was compromised as a result of the Data Breach.

39.  Defendant reasonably believe the security, confidentiality, or integrity of Plaintiff's and Class members' unencrypted personal information was compromised as a result of the Data Breach.

40.  Plaintiff's and Class members' unencrypted personal information that was acquired by an unauthorized person as a result of the Data Breach was viewed by unauthorized persons.

41.     Defendant reasonably believe Plaintiff's and Class members' unencrypted personal information that was acquired by an unauthorized person as a result of the Data Breach was viewed by unauthorized persons.

42.     It is reasonable to infer that Plaintiff's and Class members' unencrypted personal information that was acquired by an unauthorized person as a result of the Data Breach was viewed by unauthorized persons.

43.     It should be presumed that Plaintiff's and Class members' unencrypted personal information that was acquired by an unauthorized person as a result of the Data Breach was viewed by unauthorized persons.

44.     After receiving letters sent pursuant to California Civ. Code § 1798.82(a)(1) – and filed with the Attorney General of California in accordance with California Civ. Code § 1798.82(f) – it is reasonable for recipients, including Plaintiff and Class members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

**B.     The U.S. Department of Health and Human Services Breach Report**

45.     A breach report regarding the Data Breach filed by Defendant with the Secretary of the U.S. Department of Health and Human Services states that 199,548 individuals were impacted by the Data Breach (the "Breach Report"). The Breach Report also characterizes the Data Breach as a "hacking/IT incident" and further indicates that the breached information was accessed through email.

46.     The Breach Report was filed in accordance with 45 CFR § 164.408(a).

47.     Plaintiff's and Class members' Personal and Medical Information is "protected health information" as defined by 45 CFR § 160.103.

48.     Pursuant to 45 CFR § 164.408(a), breach reports are filed with the Secretary of the U.S. Department of Health and Human Services "following the discovery of a breach of unsecured protected health information."

49.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

50.     45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

51.     Plaintiff's and Class members' Personal and Medical Information is "unsecured protected health information" as defined by 45 CFR § 164.402.

52.     Plaintiff's and Class members' unsecured protected health information has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

53.     Defendants reasonably believe Plaintiff's and Class members' unsecured protected health information has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

54.     Plaintiff's and Class members' unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

55.     Defendants reasonably believe Plaintiff's and Class members' unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

56.    Plaintiff's and Class members' unsecured protected health information that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

57.    Plaintiff's and Class members' unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

58.    Defendants reasonably believe Plaintiff's and Class members' unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

59.    It is reasonable to infer that Plaintiff's and Class members' unsecured protected health information that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

60.    It should be presumed that unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

61.    After receiving notice that they were victims of a data breach that required the filing of a Breach Report in accordance with 45 CFR § 164.408(a), it is reasonable for recipients of that notice, including Plaintiff and Class members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

**C.    The Data Breach and Defendant's Failed Response**

62.    It is apparent from the Notice sent to Plaintiff and the Class and from the sample "Notice of Data Security Incident" letters sent to the California

Attorney General that the Personal and Medical Information contained within the employee email accounts was not encrypted.

63.     Following the phishing event, Defendant began working with a forensic firm to investigate the Breach. Based upon the investigation, the hackers were able to access certain employee email accounts between the dates of June 11, 2019 and June 18, 2019, where Plaintiff's and Class members' Personal and Medical Information was being held, unencrypted and unprotected.

64.     Upon information and belief, the unauthorized third-party gained access to the Personal and Medical Information and has engaged in (and will continue to engage in) misuse of the Personal and Medical Information, including marketing and selling Plaintiff's and Class members' Personal and Medical Information on the dark web.

65.     Despite knowing that nearly two hundred thousand patients across the nation were in danger as a result of the Data Breach, Defendant did nothing to warn Plaintiff or Class members until over three months after learning of the Data Breach – an unreasonable amount of time under any objective standard.

66.     Apparently, Defendant chose to complete their investigation and develop a list of talking points before giving Plaintiff and Class members the information they needed to protect themselves against fraud and identity theft.

67.     In spite of the severity of the Data Breach, Defendant has done very little to protect Plaintiff and the Class, which is obvious by the lack of assistance offered to Plaintiff and the majority of the Class.

68.     In effect, Defendant is shirking their responsibility for the harm and increased risk of harm they have caused Plaintiff and members of the Class, including the distress and financial burdens the Data Breach has placed upon the shoulders of the Data Breach victims.

69.     Defendants failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information, allowing cyber criminals to access

this wealth of priceless information for over three months before warning the criminals' victims to be on the lookout, and now offer them no remedy or relief.

70.    Defendant failed to spend sufficient resources on monitoring external incoming emails and training their employees to identify email-borne threats and defend against them.

71.    Defendant had obligations created by HIPAA, the CMIA, reasonable industry standards, common law, state statutory law, and their assurances and representations to their patients to keep patients' Personal and Medical Information confidential and to protect such Personal and Medical Information from unauthorized access.

72.    Plaintiff and Class members were required to provide their Personal and Medical Information to Defendant with the reasonable expectation and mutual understanding that they would comply with their obligations to keep such information confidential and secure from unauthorized access.

73.    The stolen Personal and Medical Information at issue has great value to the hackers, due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

**D.    Defendant had an Obligation to Protect Personal and Medical Information under Federal Law and the Applicable Standard of Care**

74.    Defendants are covered by HIPAA (45 C.F.R. § 160.102). As such, they are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

75.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

76.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

77.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

78.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

79.    HIPAA's Security Rule requires Defendant to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.    Ensure compliance by their workforce.

80.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

81.    HIPAA also requires Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic

protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

82.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[3]

83.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

84.    As described before, Defendant is also required (by the CCRA, CMIA and various other laws and regulations) to protect Plaintiff's and Class members' Personal and Medical Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

85.    In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Personal and Medical Information of the Class.

---

[3] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).

86.    Defendant owed a duty to Plaintiff and the Class to design, maintain, and test its computer and email systems to ensure that the Personal and Medical Information in Defendant's possession was adequately secured and protected.

87.    Defendant owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in its possession, including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

88.    Defendant owed a duty to Plaintiff and the Class to implement processes that would detect a breach on their data security systems in a timely manner.

89.    Defendant owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

90.    Defendant owed a duty to Plaintiff and the Class to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

91.    Defendant owed a duty to Plaintiff and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendant.

92.    Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

93.    Defendant owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**E.    Defendant was on Notice of Cyber Attack Threats in the Healthcare Industry and of the Inadequacy of its Data Security**

94.    Defendant was on notice that companies in the healthcare industry were targets for cyberattacks.

95.     Defendant was on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[4]

96.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[5]

97.     As implied by the above quote from the AMA, stolen Personal and Medical Information can be used to interrupt important medical services themselves. This is an imminent and certainly impending risk for Plaintiff and Class members.

98.     Defendant was on notice that the federal government has been concerned about healthcare company data encryption. Defendant knew it kept protected health information in its email accounts and yet it appears Defendant did not encrypt these email accounts.

---

[4] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.

[5] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

99.    The United States Department of Health and Human Services' Office for Civil Rights urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the Department fined two healthcare companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[6]

100.    As a covered entity or business associate under HIPAA, Defendant should have known about its weakness toward email-related threats and sought better protection for the Personal and Medical Information accumulating in its employees' business email accounts.

101.    In the healthcare industry, the number one threat vector from a cyber security standpoint is phishing. Cybersecurity firm Proofpoint reports that "phishing is the initial point of compromise in most significant [healthcare] security incidents, according to a recent report from the Healthcare Information and Management Systems Society (HIMSS). And yet, 18% of healthcare organizations fail to conduct phishing tests, a finding HIMSS describes as 'incredible.'"[7]

102.    The report from Proofpoint was published March 27, 2019, and summarized findings of recent healthcare industry cyber threat surveys and recounted good, common sense steps that the targeted healthcare companies should follow to prevent email-related cyberattacks.

---

[6]"Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.
[7]Aaron Jensen, *Healthcare Phishing Statistics: 2019 HIMSS Survey Results* (Mar. 27, 2019), https://www.proofpoint.com/us/security-awareness/post/healthcare-phishing-statistics-2019-himss-survey-results.

103.   One of the best protections against email related threats is security awareness training and testing on a regular basis. This should be a key part of a company's ongoing training of its employees. "[S]ince phishing is still a significant, initial point of compromise, additional work needs to be done to further lower the click rate," the HIMSS report states. "This can be done through more frequent security awareness training, phishing simulation, and better monitoring of metrics pertaining to phishing (including whether there are any particular repeat offenders)."[8]

104.   ProtonMail Technologies publishes a guide for IT Security to small businesses (i.e., companies without the heightened standard of care applicable in the healthcare industry). In its 2019 guide, ProtonMail dedicates a full chapter of its e-book guide to the danger of phishing and ways to prevent a small business from falling prey to it. It reports:

> Phishing and fraud are becoming ever more extensive problems. A recent threat survey from the cybersecurity firm Proofpoint stated that between 2017 and 2018, email-based attacks on businesses increased 476 percent. The FBI reported that these types of attacks cost companies around the world $12 billion annually.
>
> Similar to your overall IT security, your email security relies on training your employees to implement security best practices and to recognize possible phishing attempts. This must be deeply ingrained into every staff member so that every time they check their emails, they are alert to the possibility of malicious action.[9]

105.   The guidance that ProtonMail provides non-healthcare industry small businesses is likely still not adequate for companies like PIH, with the heightened healthcare standard of care based on HIPAA, CMIA, and the increased danger

---

[8] *Id.*
[9] *The ProtonMail Guide to IT Security for Small Businesses*, PROTONMAIL (2019), available at https://protonmail.com/it-security-complete-guide-for-businesses.

from the sensitivity and wealth of Personal and Medical Information it retains, but ProtonMail's guidance is informative for showing how inadequately Defendant protected the Personal and Medical Information of Plaintiff and the Class. ProofPoint lists numerous tools under the heading, "How to Prevent Phishing":

a. **Training:** "Training your employees on how to recognize phishing emails and what to do when they encounter one is the first and most important step in maintaining email security. *This training should be continuous as well. . . .*"

b. **Limit Public Information:** "Attackers cannot target your employees if they don't know their email addresses. Don't publish non-essential contact details on your website or any public directories . . . .

c. **Carefully check emails:** "First off, your employees should be skeptical anytime they receive an email from an unknown sender. Second, most phishing emails are riddled with typos, odd syntax, or stilted language. Finally, check the 'From' address to see if it is odd . . . . If an email looks suspicious, employees should report it."

d. **Beware of links and attachments:** "Do not click on links or download attachments without verifying the source first and establishing the legitimacy of the link or attachment…"

e. **Do not automatically download remote content:** "Remote content in emails, like photos, can run scripts on your computer that you are not expecting, and advanced hackers can hide malicious code in

CLASS ACTION COMPLAINT

them. You should configure your email service provider to not automatically download remote content. This will allow you to verify an email is legitimate before you run any unknown scripts contained in it."

f.    **Hover over hyperlinks:** "Never click on hyperlinked text without hovering your cursor over the link first to check the destination URL, which should appear in the lower corner of your window. Sometimes the hacker might disguise a malicious link as a short URL." [Proofpoint notes that there are tools online available for retrieving original URLs from shortened ones.]

g.    **If in doubt, investigate:** "Often phishing emails will try to create a false sense of urgency by saying something requires your immediate action. However, if your employees are not sure if an email is genuine, they should not be afraid to take extra time to verify the email. This might include asking a colleague, your IT security lead, looking up the website of the service the email is purportedly from, or, if they have a phone number, calling the institution, colleague, or client that sent the email."

h.    **Take preventative measures:** "Using an end-to-end encrypted email service gives your business's emails an added layer of protection in the case of a data breach. A spam filter will remove the numerous random emails that you might receive, making it

CLASS ACTION COMPLAINT

more difficult for a phishing attack to get through. Finally, other tools, like Domain-based Message Authentication, Reporting, and Conformance (DMARC) help you be sure that the email came from the person it claims to come from, making it easier to identify potential phishing attacks."[10]

106.    As mentioned, these are basic, common-sense email security measures that every business, whether in healthcare or not, should be doing. By adequately taking these common-sense solutions, Defendant could have prevented this Data Breach from occurring.

## F.    Cyber Criminals Will Use Plaintiff's and Class Members' Personal and Medical Information to Defraud Them

107.    Plaintiff's and Class members' Personal and Medical Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

108.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[11] For example, with the Personal and Medical Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other

---

[10]*Id.*
[11]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

harmful forms of identity theft.[12] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class members.

109.    Personal and Medical Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[13]

110.    For example, it is believed that certain Personal and Medical Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[14]

111.    The Personal and Medical Information exposed in this Data Breach are valuable to identity thieves for use in the kinds of criminal activity described herein.

112.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[15]

113.    Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that

---

[12]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[13] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu

[14] *See https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

[15]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

114.   For instance, with a stolen Social Security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[17] Identity thieves can also use the information stolen from Plaintiff and Class members to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

115.   Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[18]

116.   "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

117.   As indicated by James Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where [personal health information] can go from $20 say up to—we've seen

---

[16]*Data Breaches Are Frequent, supra* note 11.
[17] *See, e.g.,* Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.
[18] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.
[19] *Id.*

$60 or $70 [(referring to prices on dark web marketplaces)]."[20] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[21]

118.   If cyber criminals manage to steal financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant has exposed Plaintiff and Class members.

119.   A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[22]  Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[23]

120.   As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[24]

121.   Defendant's failure to offer identity monitoring to a majority of the Class, including to Plaintiff, is egregious. Moreover, Defendant's offer of one year

---

[20]IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.
[21]*Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.
[22] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.
[23] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.
[24] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

of identity theft monitoring to only a limited number of Class members (which did not involve Plaintiff) is, in and of itself, woefully inadequate, as the worst is yet to come.

122.   With this Data Breach, it is likely that identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

123.   Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[25]

124.   In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

125.   Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

        a.    Trespass, damage to, and theft of their personal property including Personal and Medical Information;

        b.    Improper disclosure of their Personal and Medical Information;

        c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and

---

[25] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

Medical Information being placed in the hands of criminals and having been already misused;

    d.    The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

    e.    Damages flowing from Defendant's untimely and inadequate notification of the Data Breach;

    f.    Loss of privacy suffered as a result of the Data Breach;

    g.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

    h.    Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

    i.    The loss of use of and access to their credit, accounts, and/or funds;

    j.    Damage to their credit due to fraudulent use of their Personal and Medical Information; and

    k.    Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

126.    Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's and Class members' Personal and Medical Information.

127.    Plaintiff and Class members are desperately trying to mitigate the damage that Defendant has caused them but, given the kind of Personal and

Medical Information Defendant made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal and Medical Information, Plaintiff and all Class members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[26]

128.   None of this should have happened. The Data Breach was preventable.

**G.    Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal and Medical Information**

129.   Data breaches are preventable.[27] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[28] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[29]

130.   "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[30]

---

[26]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[27]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[28]*Id.* at 17.
[29]*Id.* at 28.
[30]*Id.*

131.    Defendant required Plaintiff and Class members to surrender their Personal and Medical Information – including but not limited to their names, addresses, Social Security numbers, medical information, and health insurance information – and were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal and Medical Information.

132.    Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal and Medical Information.

133.    Defendant maintained the Personal and Medical Information in a reckless manner. In particular, the Personal and Medical Information was maintained and/or exchanged, unencrypted, in employee email accounts that were maintained in a condition vulnerable to cyberattacks.

134.    Defendant knew, or reasonably should have known, of the importance of safeguarding Personal and Medical Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal and Medical Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

135.    The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal and Medical Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal and Medical Information from those risks left that information in a dangerous condition.

136.    Defendant disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its employee email accounts were

protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal and Medical Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

137.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

138.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Nationwide Class, defined as follows:

> **All persons residing in the United States whose personal and medical information was compromised as a result of the PIH Health Data Breach that occurred in June 2019.**

139.    Alternatively, Plaintiff proposes the following alternative class as follows:

> **California Subclass: All residents of California whose personal and medical information was compromised as a result of the PIH Health Data Breach that occurred in June 2019.**

140.    Also, in the alternative, Plaintiff requests additional subclasses as necessary based on the types of Personal and Medical Information that were compromised.

141.    Excluded from the Nationwide Class and California Subclass is Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer

presiding over this matter and members of their immediate families and judicial staff.

142. Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses in subsequent pleadings and motions for class certification.

143. The proposed Nationwide Class or, alternatively, the California Subclass (collectively referred to herein as the "Class" unless otherwise specified) meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

144. **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical.

145. **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal and Medical Information compromised in the same way by the same conduct of Defendant.

146. **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class and proposed Subclass that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

147. **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually

CLASS ACTION COMPLAINT

to effectively redress Defendant's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

148. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

   a.   Whether Defendant engaged in the wrongful conduct alleged herein;

   b.   Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Personal and Medical Information;

   c.   Whether Defendant's email and computer systems and data security practices used to protect Plaintiff's and Class members' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, and/or state laws and/or Defendant's other duties discussed herein;

   d.   Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Personal and Medical Information, and whether it breached this duty;

   e.   Whether Defendant knew or should have known that its computer and network security systems and employee email accounts were vulnerable to a data breach;

f.     Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach;

g.     Whether Defendant breached contractual duties to Plaintiff and the Class to use reasonable care in protecting their Personal and Medical Information;

h.     Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.     Whether Defendant continues to breach duties to Plaintiff and the Class;

j.     Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

k.     Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.     Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public;

m.     Whether Defendant's actions alleged herein constitute gross negligence; and

n.     Whether Plaintiff and Class members are entitled to punitive damages.

## VI.    CAUSES OF ACTION

### A.    COUNT I – NEGLIGENCE

149.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

150. Defendant solicited, gathered, and stored the Personal and Medical Information of Plaintiff and the Class as part of the operation of its business.

151. Upon accepting and storing the Personal and Medical Information of Plaintiff and Class members, Defendant undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

152. Defendant had full knowledge of the sensitivity of the Personal and Medical Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal and Medical Information was wrongfully disclosed, and the importance of adequate security.

153. Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Personal and Medical Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

154. Defendant was well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive personal and medical information.

155. Defendant owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

156. Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or

where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

157.    Defendant had duties to protect and safeguard the Personal and Medical Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal and Medical Information. Additional duties that Defendant owed Plaintiff and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal and Medical Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class members' Personal and Medical Information in its possession by using reasonable and adequate security procedures and systems;

c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving its employee email system, networks and servers; and

d.    To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal and Medical Information.

158.    Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Personal and Medical Information that Plaintiff and the Class had entrusted to it.

159.    Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class members' Personal and Medical Information. Defendant breached its duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession;

b.    Failing to protect the Personal and Medical Information in its possession using reasonable and adequate security procedures and systems;

c.    Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

d.    Failing to use adequate email security systems, including healthcare industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

e.    Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Personal and Medical Information;

f.    Failing to adequately train its employees to not store Personal and Medical Information in its email inboxes longer than absolutely necessary for the specific purpose that it was sent or received;

g.    Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal and Medical Information;

h.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i.    Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal and Medical Information.

160.   Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

161.   As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

162.   Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Personal and Medical Information of Plaintiff and Class members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal and Medical Information of Plaintiff and Class members while it was within Defendant's possession and control.

163.   Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendant prevented Plaintiff and Class members from taking meaningful, proactive steps to securing their Personal and Medical Information and mitigating damages.

164.   As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, paying for credit monitoring and identity theft prevention services that, in most cases, were not offered to them by Defendant, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

165.   Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

166.   The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

167.   In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties under HIPAA, the FTC Act, the CCRA, and the CMIA. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, significant risk of identity theft, and Plaintiff's overpayment for goods and services, are the types of harm that these statutes and their regulations were intended to prevent.

168.   Defendant violated these statutes when it engaged in the actions and omissions alleged herein and Plaintiff's injuries were a direct and proximate result of Defendant's violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se* under Cal. Evid. Code § 669.

169.   Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal and Medical Information of Plaintiff and the Class.

170.   Defendant is an entity covered by HIPAA, 45 C.F.R. §160.102, and as such is required to comply with HIPAA's Privacy Rule and Security Rule. HIPAA requires Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). HIPAA also requires Defendant to obtain satisfactory assurances that its business associates would appropriately safeguard the protected health information it receives or creates on behalf of Defendant. 45 C.F.R. §§ 164.502(e), 164.504(e), 164.532(d) and (e). The

confidential data at issue in this case constitutes "protected health information"
within the meaning of HIPAA.

171.    HIPAA further requires Defendant to disclose the unauthorized
access and theft of the protected health information of Plaintiff and the Class
"without unreasonable delay" so that Plaintiff and Class members could take
appropriate measures to mitigate damages, protect against adverse consequences,
and thwart future misuse of their personal information. *See* 45 C.F.R. §§ 164.404,
164.406, and 164.410.

172.    The FTC Act prohibits "unfair practices in or affecting commerce,"
including, as interpreted and enforced by the FTC, the unfair act or practice by
businesses, such as Defendant, of failing to use reasonable measures to protect
Personal and Medical Information. The FTC publications and orders described
above also formed part of the basis of Defendant's duty in this regard.

173.    Defendant gathered and stored the Personal and Medical Information
of Plaintiff and the Class as part of its business of soliciting its services to its
patients, which solicitations and services affect commerce.

174.    Defendant violated the FTC Act by failing to use reasonable
measures to protect the Personal and Medical Information of Plaintiff and the
Class and by not complying with applicable industry standards, as described
herein.

175.    Defendant breached its duties to Plaintiff and the Class under the
FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer
systems and/or data security practices to safeguard Plaintiff's and Class members'
Personal and Medical Information, and by failing to provide prompt notice
without reasonable delay.

176.    Defendant's failure to comply with applicable laws and regulations
constitutes negligence *per se*.

177.    Plaintiff and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

178.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

179.    Defendant breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal and Medical Information.

180.    Additionally, Defendant had a duty to promptly notify victims of the Data Breach. For instance, HIPAA required Defendant to notify victims of the Breach within sixty (60) days of the discovery of the Data Breach. Defendant did not notify Plaintiff or Class members of the Data Breach until around January 7, 2020, more than three months after its initial discovery.[31]

181.    Defendant knew on or before October 2, 2019 that unauthorized persons had accessed and/or viewed or were reasonably likely to have accessed and/or viewed private, protected, personal information of Plaintiff and the Class.

182.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice expeditiously and/or as soon as practicable to Plaintiff and the Class of the Data Breach.

183.    Defendant's violation of the FTC Act and HIPAA constitutes negligence *per se*.

184.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

---

[31] Defendant may attempt to assert that it did not learn whose Personal and Medical Information was accessed until November 12, 2019, more than one month after it learned of the Breach, but that is no excuse for the delay.

185.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

186.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## B.    COUNT II – INVASION OF PRIVACY

187.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

188.    California established the right to privacy in Article 1, Section 1 of the California Constitution.

189.    The State of California recognizes the tort of Intrusion into Private Affairs and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B (1977).

190.    Plaintiff and Class members had a legitimate and reasonable expectation of privacy with respect to their Personal and Medical Information and were accordingly entitled to the protection of this information against disclosure to and acquisition by unauthorized third parties.

191.    Defendant owed a duty to its patients, including Plaintiff and Class members, to keep their Personal and Medical Information confidential.

192.    The unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of Personal and Medical Information, especially the type of information that is the subject of this action, is highly offensive to a reasonable person.

193.    The intrusion was into a place or thing that was private and is entitled to be private. Plaintiff and Class members disclosed their Personal and Medical Information to Defendant as part of their receiving medical care and treatment from Defendant, but privately, with the intention that such highly sensitive information would be kept confidential and protected from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing. Plaintiff and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

194.    The Data Breach constitutes an intentional interference with Plaintiff's and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

195.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

196.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and Class members.

197.    As a proximate result of Defendant's acts and omissions, Plaintiff's and Class members' Personal and Medical Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or reviewed by third parties without authorization, causing Plaintiff and Class members to suffer damages.

198.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that the Personal and Medical Information maintained by Defendant can be accessed by, acquired by, appropriated by,

disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized persons.

199.    Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class members.

### C.    COUNT III – UNJUST ENRICHMENT

200.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

201.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

202.    Plaintiff and Class members conferred a monetary benefit upon Defendant in the form of monetary payments to obtain medical services from Defendant.

203.    Defendant collected, maintained, and stored the Personal and Medical Information of Plaintiff and Class members and, as such, Defendant had direct knowledge of the monetary benefits conferred upon it by Plaintiff and Class members.

204.    Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiff and the Class members, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on HIPAA and CMIA compliance and reasonable data privacy and security measures to secure Plaintiff's and Class members' Personal and Medical Information.

205.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Personal and Medical Information, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of

Plaintiff and Class members (and continue to do so by electing to not provide free credit monitoring services to a majority of Class members negatively impacted by the Data Breach).

206.   As a direct and proximate result of Defendant's decision to profit rather than provide adequate data security, Plaintiff and Class members suffered and continue to suffer actual damages in (i) the amount of the savings and costs Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's Personal and Medical Information, (ii) time and expenses mitigating harms, (iii) diminished value of Personal and Medical Information, (iv) loss of privacy, and (v) an increased risk of future identity theft.

207.   Defendant, upon information and belief, have therefore engaged in opportunistic, unethical, and immoral conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff's and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its breach.

208.   Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

### D.   COUNT IV – BREACH OF CONTRACT

209.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

210.   Plaintiff and the Class entered into contracts with Defendant and provided payment to Defendant in exchange for Defendant's provision of medical services.

211.   The promises and representations described above relating to compliance with HIPAA, CMIA and industry practices, and about Defendant's

concern for its patients' privacy rights, became terms of the contract between it and its patients, including Plaintiff and the Class.

212. Defendant breached these promises by failing to comply with HIPAA, CMIA, and reasonable industry practices.

213. As a result of Defendant's breach of these terms, Plaintiff and the Class have been seriously harmed and put at grave risk of debilitating future harms.

214. Plaintiff and Class members are therefore entitled to damages in an amount to be determined at trial.

### E. COUNT V – BREACH OF IMPLIED CONTRACT (ALTERNATIVELY TO COUNT IV)

215. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

216. When Plaintiff and the Class members provided their Personal and Medical Information to Defendant when seeking medical services, they entered into implied contracts in which Defendant agreed to comply with its statutory and common law duties to protect Plaintiff's and Class members' Personal and Medical Information and to timely notify them in the event of a data breach.

217. Defendant required its patients to provide Personal and Medical Information in order to receive medical services from its affiliate doctors and clinicians.

218. Defendant affirmatively represented that it collected and stored the Personal and Medical Information of Plaintiffs and the members of the Class in compliance with HIPAA, the CMIA, and other statutory and common law duties, and using reasonable, industry standard means.

219. Based on the implicit understanding and also on Defendant's representations (as described above), Plaintiff and the Class accepted Defendant's offers and provided Defendant with their Personal and Medical Information.

CLASS ACTION COMPLAINT

220.    Plaintiff and Class members would not have provided their Personal and Medical Information to Defendant had they known that Defendant would not safeguard their Personal and Medical Information, as promised, or provide timely notice of a data breach.

221.    Plaintiff and Class members fully performed their obligations under the implied contracts with Defendant.

222.    Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class members' Personal and Medical Information and by failing to provide them with timely and accurate notice of the Data Breach.

223.    The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Defendant's breach of the implied contract with Plaintiff and Class members.

### F.    COUNT VI – BREACH OF CONFIDENCE

224.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

225.    At all times during Plaintiff's and Class members' interactions with Defendant, Defendant was fully aware of the confidential nature of the Personal and Medical Information that Plaintiff and Class members provided to Defendant.

226.    As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by promises and expectations that Plaintiff and Class members' Personal and Medical Information would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

227.    Plaintiff and Class members provided their respective Personal and Medical Information to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the Personal and Medical Information to be accessed by, acquired by, appropriated by, disclosed to,

encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

228.  Plaintiff and Class members also provided their Personal and Medical Information to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect their Personal and Medical Information from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks, data systems, and employee business email accounts.

229.  Defendant voluntarily received, in confidence, Plaintiff's and Class members' Personal and Medical Information with the understanding that the Personal and Medical Information would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

230.  Due to Defendant's failure to prevent, detect, and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Plaintiff's and Class members' Personal and Medical Information, Plaintiff's and Class members' Personal and Medical Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiff's and Class members' confidence, and without their express permission.

231.  As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and Class members have suffered damages as alleged herein.

232.  But for Defendant's failure to maintain and protect Plaintiff's and Class members' Personal and Medical Information in violation of the parties' understanding of confidence, their Personal and Medical Information would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by,

exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the misuse of Plaintiff's and Class members' Personal and Medical Information, as well as the resulting damages.

233.    The injury and harm Plaintiff and Class members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Plaintiff's and Class members' Personal and Medical Information. Defendant knew its data systems and protocols for accepting and securing Plaintiff's and Class members' Personal and Medical Information had security and other vulnerabilities that placed Plaintiff's and Class members' Personal and Medical Information in jeopardy.

234.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class members have suffered and will suffer injury, as alleged herein, including but not limited to (a) actual identity theft; (b) the compromise, publication, and/or theft of their Personal and Medical Information; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal and Medical Information; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk to their Personal and Medical Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Class Members' Personal and Medical Information in their continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members;

and (g) the diminished value of Defendant's services Plaintiff and Class members received.

### G.    COUNT VII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

235.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

236.    As described above, Defendant made promises and representations to Plaintiff and the Class that it would comply with HIPAA and other applicable laws and industry best practices.

237.    These promises and representations became a part of the contract between Defendant and Plaintiff and the Class.

238.    While Defendant had discretion in the specifics of how it met the applicable laws and industry standards, this discretion was governed by an implied covenant of good faith and fair dealing.

239.    Defendant breached this implied covenant when it engaged in acts and/or omissions that are declared unfair trade practices by the FTC and state statutes and regulations (including California's UCL), and when it engaged in unlawful practices under HIPAA, the CMIA, and other state personal and medical privacy laws. These acts and omissions included: representing that it would maintain adequate data privacy and security practices and procedures to safeguard the Personal and Medical Information from unauthorized disclosures, releases, data breaches, and theft; omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal and Medical Information; and failing to disclose to the Class at the time they provided their Personal and Medical Information to it that Defendant's data security systems and protocols, including training, auditing, and testing of employees, failed to meet applicable legal and industry standards.

240.    Plaintiff and Class members did all or substantially all the significant things that the contract required them to do.

241.    Likewise, all conditions required for Defendant's performance were met.

242.    Defendant's acts and omissions unfairly interfered with Plaintiff's and Class members' rights to receive the full benefit of their contracts.

243.    Plaintiff and Class members have been harmed by Defendant's breach of this implied covenant in the many ways described above, including overpayment for services, the purchase of identity theft monitoring services not provided by Defendant, imminent risk of certainly impending and devastating identity theft that exists now that cyber criminals have their Personal and Medical Information, and the attendant long-term time and expenses spent attempting to mitigate and insure against these risks.

244.    Defendant is liable for this breach of these implied covenants, whether or not it is found to have breached any specific express contractual term.

245.    Plaintiff and Class members are entitled to damages, including compensatory damages and restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

H.    **COUNT IX – VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.***

246.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

247.    Plaintiff brings this Count against Defendant on behalf of the Class or, alternatively, the California Subclass.

248.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading

advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

    a.    by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing and advertising that it did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class's Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class' Personal and Medical Information;

    b.    by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately protected; and by storing Plaintiff's and Class members' Personal and Medical Information in an unsecure electronic environment;

    c.    by failing to disclose the Data Breach in a timely and accurate manner, in violation of Cal. Civ. Code §1798.82;

    d.    by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

    e.    by violating the CMIA, Cal. Civ. Code § 56, *et seq.*; and

    f.    by violating the CCRA, Cal. Civ. Code § 1798.82.

249.    These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Defendant's practices were also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities that solicit or are entrusted with personal data utilize appropriate security measures, as

reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, CMIA, Cal. Civ. Code § 56, *et seq.*, and the CCRA, Cal. Civ. Code § 1798.81.5.

250.   As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiff and the Class were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and additional losses described above.

251.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and Class members' Personal and Medical Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

252.   Plaintiff seeks relief under the UCL, including restitution to the Class of money or property that Defendant may have acquired by means of Defendant's deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. P. § 1021.5), and injunctive or other equitable relief.

I.   **COUNT X – VIOLATIONS OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, Cal. Civ. Code § 56, *et seq.***

253.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

254.   Plaintiff brings this Count against Defendant on behalf of the Class or, alternatively, the California Subclass.

255.    Defendant is a "provider[s] of healthcare," as defined in Cal. Civ. Code § 56.06, and is therefore subject to the requirements of the CMIA, Cal. Civ. Code §§ 56.10(a), (d) and (e), 56.36(b), 56.101(a) and (b).

256.    Defendant is a person licensed under California's Business and Professions Code, Division 2. *See* Cal. Bus. Prof. Code § 4000, *et seq.* Defendant therefore qualifies as "provider[s] of healthcare" under the CMIA.

257.    Plaintiff and the Class are "patients" as defined in CMIA, Cal. Civ. Code § 56.05(k) ("'Patient' means any natural person, whether or not still living, who received healthcare services from a provider of healthcare and to whom medical information pertains.").

258.    Defendant disclosed "medical information," as defined in CMIA, Cal. Civ. Code § 56.05(j), to unauthorized persons without first obtaining consent, in violation of Cal. Civ. Code § 56.10(a). The disclosure of information to unauthorized individuals in the Data Breach resulted from the affirmative actions of Defendant's employees, which allowed the hackers to see and obtain Plaintiff's and the Class members' medical information.

259.    Defendant's negligence resulted in the release of individually identifiable medical information pertaining to Plaintiff and the Class to unauthorized persons and the breach of the confidentiality of that information. Defendant's negligent failure to maintain, preserve, store, abandon, destroy, and/or dispose of Plaintiff's and Class members' medical information in a manner that preserved the confidentiality of the information contained therein, in violation of Cal. Civ. Code §§ 56.06 and 56.101(a).

260.    Defendant's computer and email systems and protocols did not protect and preserve the integrity of electronic medical information in violation of Cal. Civ. Code § 56.101(b)(1)(A).

261.    Plaintiff and the Class were injured and have suffered damages, as described above, from Defendant's illegal disclosure and negligent release of their

medical information in violation of Cal. Civ. Code §§ 56.10 and 56.101, and therefore seek relief under Civ. Code §§ 56.35 and 56.36, including actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorney fees, expenses and costs.

**J.    COUNT X – VIOLATIONS OF CALIFORNIA CUSTOMER RECORDS ACT, Cal. Civ. Code § 1798.80, _et seq._**

262.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

263.    Plaintiff brings this Count against Defendant on behalf of the California Subclass.

264.    Section 1798.82 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay …"

265.    The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

266.    Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

    a.    The security breach notification shall be written in plain language;

b.  The security breach notification shall include, at a minimum, the following information:

i.  The name and contact information of the reporting person or business subject to this section;

ii.  A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

iii.  If the information is possible to determine at the time the notice is provided, then any of the following:

1.  The date of the breach;

2.  The estimated date of the breach; or

3.  The date range within which the breach occurred. The notification shall also include the date of the notice.

iv.  Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

v.  A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

vi.  The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

267.  The Data Breach described herein constituted a "breach of the security system" of Defendant.

CLASS ACTION COMPLAINT

268.   As alleged above, Defendant unreasonably delayed informing Plaintiff and Class members about the Data Breach affecting their Personal and Medical Information, even after Defendant knew the Data Breach had occurred.

269.   Defendant failed to disclose to Plaintiff and the Class, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal and Medical Information when Defendant knew or reasonably believed such information had been compromised.

270.   Defendant's ongoing business interests gave Defendant an incentive to conceal the Data Breach from the public to ensure continued revenue.

271.   Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff and the Class would impede its investigation.

272.   As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

273.   As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

274.   Plaintiff and the Class seek all remedies available under Cal. Civ. Code § 1798.84, including but not limited to, the damages suffered by Plaintiff and the other Class members as alleged above, and equitable relief.

275.   Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving

Plaintiff and the Class of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff and the Class and despicable conduct that has subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiff and the Class are entitled to punitive damages against Defendants under Cal. Civ. Code § 3294(a).

### K.    COUNT XI – DECLARATORY RELIEF

276.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

277.    Plaintiff brings this Count under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

278.    As previously alleged, Plaintiff and members of the Class entered into an implied contract that required Defendant to provide adequate security for the Personal and Medical Information it collected from Plaintiff and the Class.

279.    Defendant owes a duty of care to Plaintiff and the members of the Class that requires it to adequately secure Personal and Medical Information.

280.    Defendant still possesses Personal and Medical Information regarding Plaintiff and members of the Class.

281.    Since the Data Breach, Defendant has announced few if any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer and email systems and/or security practices which permitted the Data Breach to occur and go undetected for months and, thereby, prevent further attacks.

282.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendant's insufficient data security is

known to hackers, the Personal and Medical Information in Defendant's possession is even more vulnerable to cyberattack.

283.   Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their Personal and Medical Information and Defendant's failure to address the security failings that lead to such exposure.

284.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the breach to meet Defendant's contractual obligations and legal duties.

285.   Plaintiff, therefore, seeks a declaration that Defendant's existing security measures do not comply with its contractual obligations and duty of care to provide adequate security and that to comply with its contractual obligations and duty of care, Defendant must implement and maintain additional security measures.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.   An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.   A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages (including statutory damages under the CMIA), punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

i.  Ordering that Defendant engages third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.  Ordering that Defendant engages third-party security auditors and internal personnel to run automated security monitoring;

iii.  Ordering that Defendant audits, tests, and trains its security personnel regarding any new or modified procedures;

iv.  Ordering that Defendant segments customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's system is compromised, hackers cannot gain access to other portions of Defendant's system;

v.  Ordering that Defendant ceases transmitting Personal and Medical Information via unencrypted email;

vi.  Ordering that Defendant ceases storing Personal and Medical Information in email accounts;

vii.  Ordering that Defendant purges, deletes, and destroys in a reasonably secure manner customer data not necessary for its provisions of services;

CLASS ACTION COMPLAINT

viii.    Ordering that Defendant conducts regular database scanning and securing checks;

ix.    Ordering that Defendant routinely and continually conducts internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x.    Ordering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they faces as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves;

d.    An order requiring Defendant to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.    An award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


DATED:  September 8, 2021          **GREEN & NOBLIN, P.C.**


By:  _/s/ Robert S. Green_____
Robert S. Green

CLASS ACTION COMPLAINT

Emrah M. Sumer
2200 Larkspur Landing Circle, Suite 101
Larkspur, CA  94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

James Robert Noblin
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, CA 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

William B. Federman*
wbf@federmanlaw.com
Oklahoma Bar No. 2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*Pro hac vice* application to be submitted

*Counsel for Plaintiff and the Proposed
Class*

CLASS ACTION COMPLAINT